BRUCE J. HIGHMAN, CBN 101760
HIGHMAN & HIGHMAN
A PROFESSIONAL LAW ASSOCIATION
582 Market Street, Suite 1212
San Francisco, CA 94104
Telephone: (415) 982-5563
Fax: (415) 982-5202
Email: bruce.highman@highmanlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUNEEL RAJPAL, an individual,<br><br>  Plaintiff,<br><br> -v-<br><br>VICOR CORPORATION, a corporation, also known as VICOR CORPORATION WHICH SHALL DO BUSINESS IN CALIFORNIA AS 'WESTCOR,' and DOES 1-10, inclusive,<br><br>  Defendants. | No.<br><br>COMPLAINT FOR RELIEF FOR VIOLATION OF FAIR EMPLOYMENT AND HOUSING ACT, 42 U.S.C. § 1981 AND LABOR CODE §§ 1102.5, 98.6, 1197.5, 1194, 1198, 510, 204, 201, 203, 226 SUBD. (A), 1174 AND 1199; DEMAND FOR JURY TRIAL |

## PARTIES

1. Plaintiff Suneel Rajpal, an individual, is a citizen of the State of California and the United States. Defendant Vicor Corporation, a corporation, also known as Vicor Corporation which shall do business in California as 'Westcor,' is incorporated in the State of Delaware and has its principal place of business in the State of Massachusetts. Rajpal began working for Vicor on February 29, 2016 as a Principal TSC Engineer. On July 5, 2016, he became a Regional Sales Manager. He remained as a Regional Sales Manager until his termination on March 5, 2019.

2. The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of defendants sued herein as Does 1-10, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names and will pray leave to amend this complaint together with appropriate charging allegations when the same have been ascertained.  Plaintiff is informed

1  and believes and thereupon alleges that each of said fictitiously named defendants are responsible
2  in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged,
3  were proximately caused by their conduct.

**JURISDICTION**

3. The Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 because plaintiff Rajpal is a citizen of the State of California and the named defendant, Vicor Corporation, is a citizen of the States of Delaware and Massachusetts. The Court also has federal question jurisdiction under 28 U.S.C. § 1331 because the second claim for relief is brought under 42 U.S.C. § 1981. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the other claims which are brought under California law.

**VENUE**

4. The events alleged herein took place in the County of Santa Clara in the San Jose Division of the Northern District of California. Therefore, venue is appropriate in the San Jose Division of the Northern District of California.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF FAIR EMPLOYMENT AND HOUSING ACT (FEHA)**
**(DEFENDANTS ARE DEFENDANTS AND EACH OF THEM)**

5. Rajpal refers to the allegations of paragraphs 1-4 above and incorporates the same herein by this reference as though set forth in full.

6. Defendants perpetrated adverse employment actions against Rajpal throughout his employment with Vicor and continuing through his termination. But-for factors, substantial motivating factors, motivating factors, contributing factors and factors in causing Vicor to perpetrate these adverse actions included without limitation his being Indian, brown skinned and Asian and older (date of birth July 8, 1955 - age 63 when terminated), and his opposing the discrimination, including without limitation the discriminatory adverse employment actions perpetrated against him. Rajpal filed a complaint regarding these adverse actions with the Massachusetts Commission Against Discrimination (MCAD) on May 7, 2019 (MCAD No. 19BEM01438) in which he alleged that the actions were taken against him because he is Indian and Asian and brown skinned and older, and because he opposed the discrimination. The claim filed with the MCAD was cross-filed with the

EEOC (EEOC No. 16C-2019-01721). The MCAD complaint and EEOC charge are pending. The MCAD is currently investigating the allegations in the complaint.

7. Vicor is headquartered in Massachusetts. A Massachusetts attorney filed the MCAD complaint for Rajpal. However, Rajpal worked for Vicor in Santa Clara, California, and lives in San Jose, California. The California Fair Employment and Housing Act (FEHA) thus applies to his claims for employment discrimination and retaliation for opposing discrimination.

8. The adverse actions perpetrated against Rajpal due to his being Indian, Asian, brown skinned and older and opposing discrimination, include without limitation the acts set forth in paragraphs 9-32 below.

9. Rajpal was not reimbursed for his overnight travel expenses that he incurred on a business trip in May 2016, whereas his supervisor who is not Indian or Asian was reimbursed for her overnight expenses on the same trip.

10. Rajpal was not paid a $400 per month car allowance until March 2, 2019, three days before his termination when Vicor gave him a back lump sum of $12,800 for 32 months of unpaid car allowance. This was in response to Vicor HR's investigation of a written discrimination complaint Rajpal submitted on January 13, 2019. His supervisor, Ajith Jain, had previously told Rajpal in December 2017 that he had requested a car allowance for Rajpal and management above Jain had rejected it.

11. Rajpal was paid a lower salary than he should have been paid and was paid a lower salary than other employees performing substantially similar work with equal or lesser qualifications who were not Indian and/or who were younger. Rajpal is informed and believes that other Indian and/or older employees were also underpaid compared to employees who were not Indian and/or who were younger.

12. Rajpal's offer letter stated among other things: "MBO Plan: The plan is linked to the achievement of specific business objectives as agreed to by you and Myra Espinola-Stannius, and targets an end of year 15% payout of base salary, but may be higher or lower depending on your performance." Rajpal's overall rating on his 2016 and 2017 performance reviews was "Meets Expectations." He did not receive a performance review for 2018. His MBO payout for each year

1  was, however, always less than half of the 15%.

2  13. In or about February 2017, John Sturm, VP of North American Sales, and the person to whom Rajpal's supervisor reported at the time, shouted and falsely stated that he attended more conference calls than Rajpal. Rajpal calmly told Sturm that was inaccurate. Sturm continued shouting. After the conversation, he sent a letter threatening that Rajpal's employment would be terminated if this "insubordinate" behavior continued and he falsely claimed that Rajpal was speaking ill of employees. Rajpal responded with facts to Human Resources Manager Lisa DeRusha but never heard back.

14. In March 2017, Rajpal received his annual review for 2016 from his supervisor, Ajith Jain. It was favorable with the exception of some false negative comments which Jain said were inserted by Sturm. Rajpal submitted written rebuttal to the false negative comments but neither HR nor Sturm responded.

15. In October 2017, Sturm commented to Rajpal that he was no spring chicken.

16. In March 2018, Rajpal's supervisor, Jain, gave Sturm a favorable annual performance review for 2017 other than false negative comments that Jain told Rajpal that Sturm had inserted. Rajpal submitted rebuttal. The HR manager agreed with Rajpal, at least to some extent, but the false negative comments remained in the review in Rajpal's personnel file.

17. In April 2018, Rajpal was asked to fill out a Customer Quality document which went to the customer, something which his job description did not call for, and it asked for a 30 year history on failed parts. Rajpal was working on it with the Quality Group. Sturm then filled out the form himself and made false representations on it about the quality of the product. The document asked about past failures. In response, Sturm falsely failed to disclose past failures. Sturm claimed he filled out the form in five minutes and chastised Rajpal for not doing that. It should be noted that the product in question was being produced in connection with a contract to supply goods to the United States military.

18. Jain had told Rajpal that he would recommend Rajpal to upper management for promotion into Jain's position if Jain got a promotion. In August 2018 when Jain moved to another position (Rajpal believes the move was a lateral), Rajpal was not even considered for the promotion.

1  Due to his move to another position, Jain was no longer Rajpal's immediate boss. Instead, Rajpal's
2  immediate boss was now Matt Renola. Jain had really liked Rajpal. He was pleased with Rajpal's
3  performance, including in Rajpal's growing the business in his assigned accounts, and he had also
4  assigned Rajpal more accounts. With Jain no longer being Rajpal's immediate boss, it became much
5  easier for Sturm and Vicor to discriminate and retaliate against Rajpal.

6      19. In September 2018, Jain made an age related comment to Phil Davies, Vicor's Corporate
7  Vice President, Global Sales and Marketing. The comment related to Rajpal and said "How many
8  more years would we be on the job?"

9      20. In November 2018, Sturm falsely told Rajpal that he was not on top of one customer
10 issue, whereas in fact Rajpal was on top of it and in constant communication with all parties on the
11 issue.

12     21. Rajpal had the second highest total bookings (total sales dollars booked) among the Prime
13 Account Regional Sales Managers and had the highest conversion rate. He also exceeded the
14 bookings goal Vicor set for him by about 30% in 2017 and 25% in 2018.

15     22. Rajpal only had two face to face visits with customers in December 2018. This was
16 because he had to cancel his three day visit to Southern California that month where he would have
17 visited five customers a day. He had to cancel it because Sturm went golfing with the sales
18 representatives when the trip was going to be. Shortly after golfing with Sturm, Robert Flournoy, a
19 sales representative, told Rajpal that Sturm and Matt Renola (who had replaced Jain as Rajpal's
20 immediate supervisor and who reported to Sturm) were complimentary of Rajpal's work on the
21 Prime Accounts. Rajpal's job was to handle Prime Accounts. Flournoy said Sturm and Renola were
22 less complimentary of the handling of the A-Z accounts which were handled by another employee.

23     23. Nonetheless on January 10, 2019, Sturm visited the Santa Clara, California office where
24 Rajpal worked. He said Regional Sales Managers needed to travel 30-50% of the time. Rajpal had
25 never been told this before. It was not in the job description for Regional Sales Managers. Sturm
26 shouted and said Rajpal was a low performer because he had a low number of face to face visits with
27 customers. Sturm said his bookings, conversion rate and the other metrics which were set up in the
28 official annual plan were irrelevant even though those were the agreed goals set up for Regional

Sales Managers, and Rajpal had good numbers and exceeded his goals on them. Moreover, as mentioned above, the reason Rajpal only had two face to face visits with clients in December 2018 was because Sturm went golfing with the sales representatives when the customer visits had been scheduled. Rajpal, and Mayrose Morris, who was Asian and Filipino and the other Prime Account Regional Sales Manager in Santa Clara, both told Sturm that if he wanted them to make more visits, he would have to give them more accounts. In this regard, it should be noted that it was not the job of the Prime Account Managers to bring in new accounts. Rather, they were given accounts of existing customers, and it was their job to maintain and increase the purchases made by those existing customers. Myra Espinola had many more accounts than Rajpal or Morris although her accounts did not have as high bookings. Sturm said he was going to give Rajpal and Morris more accounts and he was going to put them on a Performance Improvement Plan. Rajpal and Morris opposed being put on a Performance Improvement Plan which was very unjust since they had not previously been told that they had to travel 30-50% of the time or that face to face customer visits was the metric that mattered.

24. However, instead of putting them on a Performance Improvement Plan, Sturm thereafter made false statements about Rajpal and Morris to his boss, Phil Davies, the Corporate Vice President, Global Sales and Marketing, and Lisa DeRusha of HR to get Rajpal and Morris fired. He emailed DeRusha on January 13, 2019, stating:

> Given the fact that Suneel made 2 calls in December and none so far this month and then will be off the whole month of February, I am getting 2 calls for a whole quarter from him, where he should be making close to 50. . . .

> . . . . That is Suneel and Mayrose. I am not getting any production from them, so I may as well not have them.

> Suneel admitted in front of Matt and everyone else that he has had conversations with Mayrose about there just not being enough Prime account activity for them. . . . [I]t is too expensive to have people in CA that are not contributing, so I don't need the positions. We will cover any Prime account needs out of Chicago and Andover. . . .

25. The above statements in Sturm's January 13, 2019 email were false. Rajpal typically visited customers the third week of each month. He spent two whole days visiting customers in Southern California the week of January 21, 2019. Typically he visited about five customers a day

1   on these trips. He had to submit a request to management for approval of his travel at least two

2   weeks beforehand. Thus, Sturm would have known of Rajpal's trip to Southern California to visit

3   customers the week of January 21 when he wrote the above email to DeRusha on January 13

4   claiming Rajpal was making two calls for a whole quarter. Interestingly, while Sturm omits mention

5   of Rajpal's upcoming trip to Southern California the week of January 21, he does mention in the

6   email that Rajpal was going to be off all of February, although he doesn't mention that the reason was

7   that Rajpal had an approved vacation for February. Also, as mentioned above, and unlike what Sturm

8   claims in the email, Rajpal was highly productive as demonstrated by his high bookings and

9   conversions and his exceeding the goals Vicor agreed upon for him. And Sturm fails to mention

10  that the reason Rajpal didn't have more face to face visits for December was because his trip to visit

11  customers then had to be canceled because Sturm went golfing with the sales representatives.

12      26. The statement that Rajpal had said there was not enough account activity for him and

13  Morris was also false. Rajpal wouldn't say that since Morris had the highest bookings of all the

14  Prime Account Regional Sales Managers and he had the second highest. Rather as mentioned above,

15  what Rajpal and Morris both said was that if Sturm wanted them to do more customer visits, Vicor

16  would have to give them more accounts.

17      27. The statement that the Prime Account needs would be handled out of Andover and

18  Chicago was also false. Rajpal is informed and believes that after his termination on March 5, 2019,

19  his accounts were handled by Jim Bulawa, a Caucasian, who was transferred from Chicago to

20  Southern California so he could handle Rajpal's accounts.

21      28. Sturm's Sunday, January 13, 2019 email to DeRusha mentions that he talked with Davies

22  on Friday, January 11, about his meetings with Rajpal and Morris. Rajpal is informed and believes

23  that Sturm made the same false statements to Davies that he made in his email to DeRusha.

24      29. Rajpal submitted correspondence to Davies and HR and Sturm himself on January 13,

25  2019, complaining about the above adverse employment actions except that he didn't know then that

26  Sturm had had the above communications with Davies and DeRusha on January 11 and 13. HR

27  investigated Rajpal's allegations. Vicor submitted to the MCAD the notes taken by HR of the

28  interviews conducted in this investigation. Vicor does not appear to have produced to the MCAD

any notes of an interview of Sturm. Thus, it does not appear that HR interviewed Sturm who, along with Rajpal, would be the most significant witness to interview regarding Rajpal's allegations.

30. On March 5, 2019, Vicor terminated Rajpal, Morris and Brian Rosario. The written termination notice Rajpal received gave as the reason: "[I]t has been decided to eliminate the West Prime Account coverage structure from the West Coast facility effective immediately. Therefore, unfortunately, your position is being impacted, and your position is being eliminated effective immediately." The statement that the Prime Account structure was being eliminated form the West Coast was false. Instead, as indicated above, Rajpal is informed and believes that Jim Bulawa, a Caucasian, was transferred from Chicago to Southern California to handle Rajpal's accounts.

31. It should be noted that Morris and Rajpal were the only Asian Prime Account Regional Sales Managers, and they had the highest bookings of all the Prime Account Regional Sales Managers. For 2018, Morris had $13.2 million in bookings and Rajpal had $12.5 million. The other three Prime Account Regional Account Sales Managers were all Caucasian and were not terminated. They respectively had bookings in 2018 of $10.9 million, $5.7 million and $2.5 million.

32. Vicor submitted to the MCAD a document stating that before Rajpal was terminated, Matt Renola had nine Caucasian, four Asian and one Hispanic direct reports. Three of the direct reports listed as Asian, Rajpal, Morris and Brian Rosario, were terminated on March 5, 2019. Thus, it appears that after this termination, Renola had nine Caucasian, one Asian and one Hispanic direct reports. The same document lists six direct reports for Sturm to whom Renola reported. It states that five of the direct reports were Caucasian and one was Asian.

33. The abovementioned adverse employment actions against Rajpal violated the FEHA in that substantial motivating factors in causing defendants to perpetrate them against Rajpal include without limitation his being Indian, brown skinned and Asian and older (date of birth July 8, 1955 - age 63 when terminated), and his opposing the discrimination. Defendants also violated the FEHA as to Rajpal by failing to take all reasonable steps to prevent discrimination from occurring.

34. Rajpal filed a complaint with the California Department of Fair Employment and Housing and received a right to sue letter thereon, thereby exhausting his administrative remedies.

35. As a proximate result of defendants' violations of the FEHA, Rajpal has suffered

1 damages to be shown according to proof, including without limitation for lost income and benefits 2 with prejudgment interest thereon, emotional and physical distress, inconvenience, mental anguish, 3 loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

4     36. Defendants' violations of the FEHA were malicious, oppressive, fraudulent, and done 5 with reckless and conscious indifference to Rajpal's rights, and he is entitled to an award of punitive 6 damages therefor to be shown according to proof.

7     37. As the further proximate result of defendants' violations of the FEHA, Rajpal has had 8 to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award 9 of attorneys' fees and litigation expenses therefor to be shown according to proof.

10     WHEREFOR, Rajpal prays judgment against defendants and each of them as set forth below.

11
**SECOND CLAIM FOR RELIEF
VIOLATION OF 42 U.S.C. § 1981
12 (DEFENDANTS ARE DEFENDANTS AND EACH OF THEM)**

13     38. Rajpal refers to the allegations of paragraphs 1-32 above and incorporates the same 14 herein by this reference as though set forth in full.

15     39. The abovementioned adverse employment actions against Rajpal violated 42 U.S.C. § 16 1981 in that factors in causing defendants to perpetrate them against Rajpal include without 17 limitation his being Indian, brown skinned and Asian, and his opposing the discrimination.

18     40. As a proximate result of defendants' violations of 42 U.S.C. § 1981, Rajpal has suffered 19 damages to be shown according to proof, including without limitation for lost income and benefits 20 with prejudgment interest thereon, emotional and physical distress, inconvenience, mental anguish, 21 loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

22     41. Defendants' violations of 42 U.S.C. § 1981 were malicious, oppressive, fraudulent, and 23 done with reckless and conscious indifference to Rajpal's rights, and he is entitled to an award of 24 punitive damages therefor to be shown according to proof.

25     42. As the further proximate result of defendants' violations of 42 U.S.C. § 1981, Rajpal has 26 had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an 27 award of attorneys' fees and litigation expenses therefor to be shown according to proof.

28     WHEREFOR, Rajpal prays judgment against defendants and each of them as set forth below.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF LABOR CODE § 1102.5**
**(DEFENDANTS ARE DEFENDANTS AND EACH OF THEM)**

43. Rajpal refers to the allegations of paragraphs 1-32 above and incorporates the same herein by this reference as though set forth in full.

44. Labor Code § 1102.5, subdivision (b), states: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee, or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation, . . . ."

45. Rajpal complained about and disclosed the adverse employment actions perpetrated against him that are set forth in paragraph 9-32 above to persons with authority over him and to employees who had the authority to investigate, discover, or correct the violation or noncompliance, including but not limited to Jain, Sturm and Davies, and to Lisa DeRusha and Nancy Grava in Human Resources. He had reasonable cause to believe that the adverse employment actions were discriminatory and retaliatory and violated statutes, rules and regulations against discrimination and retaliation for opposing discrimination. The adverse actions did in fact violate statutes, rules and regulations against discrimination and retaliation for opposing discrimination, including without limitation, Title VII, the Age Discrimination in Employment Act, 42 U.S.C. § 1981, the FEHA, and Labor Code §§ 1197.5, 1102.5 and 98.6.

46. Rajpal also had reasonable cause to believe that Vicor's failure to pay him the $400 per month car allowance and even half the 15% MBO pay violated statutes requiring employers to timely pay all wages to their employees. The failure to pay the car allowance and even half the 15% MBO did in fact violate statutes, rules and regulations requiring employers to timely pay all wages to their employees including without limitation Labor Code §§ 201, 203 and 204, and the Unfair Competition Law, Business and Professions Code § 17200 et seq. After Vicor failed to pay even half the 15% MBO pay, he also had reasonable cause to believe that Vicor never intended to pay the 15%

MBO pay, so he had reasonable cause to believe that Vicor's representations regarding paying 15% MBO pay in the offer letter and when he was hired, and then not paying even half of that, violated statutes, rules and regulations against fraud and unfair business practices. Vicor's representations regarding paying 15% MBO pay and then not paying even half of that did in fact violate statutes, rules and regulations against fraud and unfair business practices including without limitation Penal Code §§ 484 and 532, Civil Code §§ 1572, 1573, 1709 and 1710, and the Unfair Competition Law, Business and Professions Code § 17200 et seq.

47. As alleged above in paragraph 17, Sturm made false representations in April 2018 to a customer about a product including without limitation as to past failures of the product. Rajpal disclosed and complained to Sturm, Jain, Davies, and Nancy Grava of Human Resources about this conduct by Sturm. It should be noted that the product in question was being produced in connection with a contract to supply goods to the United States military. Rajpal had reasonable cause to believe that this conduct by Sturm violated statutes, rules and regulations against fraud, false statements and unfair business practices. The conduct by Sturm did in fact violate statutes, rules and regulations against fraud, false statements and unfair business practices including without limitation 31U.S.C. § 3729 of the False Claims Act, 18 U.S.C. § 1001 which is the False Statements Act, and Penal Code §§ 484 and 532, Civil Code §§ 1572, 1573, 1709 and 1710, and the Unfair Competition Law, Business and Professions Code § 17200 et seq.

48. Thus, Rajpal's complaints and disclosures constitute disclosures that are protected from retaliation under Labor Code § 1102.5.

49. Labor Code § 1102.5, subdivision (c), states: " An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Sturm wanted Rajpal to fill out the document for the customer set forth in paragraph 17 above quickly and falsely and without regard to the truth. But to have done that would have violated statutes, rules and regulations against fraud, false statements and unfair business practices including without limitation 31U.S.C. § 3729 of the False Claims Act, 18 U.S.C. § 1001 which is the False Statements Act, and Penal Code §§ 484 and 532, Civil Code

§§ 1572, 1573, 1709 and 1710, and the Unfair Competition Law, Business and Professions Code § 17200 et seq. Rajpal's refusal to do so was thus protected conduct under Labor Code § 1102.5.

50. The abovementioned adverse employment actions against Rajpal violated Labor Code § 1102.5 in that a contributing factor in causing defendants to perpetrate them against Rajpal includes without limitation his abovementioned conduct that is protected from retaliation under Labor Code § 1102.5.

51. As a proximate result of defendants' violations of Labor Code § 1102.5, Rajpal has suffered damages to be shown according to proof, including without limitation for lost income and benefits with prejudgment interest thereon, emotional and physical distress, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, and other nonpecuniary losses.

52. Defendants' violations of Labor Code § 1102.5 were malicious, oppressive, fraudulent, and done with reckless and conscious indifference to Rajpal's rights, and he is entitled to an award of punitive damages therefor to be shown according to proof.

53. As the further proximate result of defendants' violations of Labor Code § 1102.5, Rajpal has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFOR, Rajpal prays judgment against defendants and each of them as set forth below.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF LABOR CODE § 98.6**
**(DEFENDANTS ARE DEFENDANTS AND EACH OF THEM)**

54. Rajpal refers to the allegations of paragraphs 1-32 and 44-50 above and incorporates the same herein by this reference as though set forth in full.

55. Labor Code § 98.6 prohibits retaliation against an employee for exercising his rights under the Labor Code as well as for engaging in conduct delineated in Labor Code § 1102.5. Rajpal engaged in conduct protected from retaliation under Labor Code § 98.6 when as set forth in paragraphs 44-50 above, he engaged in conduct delineated in Labor Code § 1102.5 and exercised his rights under Labor Code § 1102.5. Defendants' violations of Labor Code § 1102.5 also violated Labor Code § 98.6.

56. As the proximate result of defendants' violations of Labor Code § 98.6, Rajpal has

suffered damages and is entitled to an award therefor to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon.

57. Pursuant to Labor Code § 98.6, subdivision (b)(3), Rajpal is entitled to a penalty of $10,000 for each violation of Labor Code § 98.6.

58. As the further proximate result of defendants' violations of Labor Code § 98.6, Rajpal has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Rajpal prays judgment against defendants and each of them as set forth below.

**FIFTH CLAIM FOR RELIEF**
**FAILURE TO PROVIDE EQUAL PAY WITH NON-INDIANS**
**IN VIOLATION OF LABOR CODE § 1197.5**
**(DEFENDANTS ARE DEFENDANTS AND EACH OF THEM)**

59. Rajpal refers to the allegations of paragraphs 1-4 and 10-11 above and incorporates the same herein by this reference as though set forth in full.

60. Labor Code § 1197.5 states: "An employer shall not pay any of its employees at wage rates less than the rates paid to employees of another race or ethnicity for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, . . . ." In violation of § 1197.5, defendants paid Rajpal and other Indian employees at wage rates less than non-Indian employees for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

61. As the proximate result of defendants' violations of Labor Code § 1197.5, Rajpal has suffered damages and is entitled to an award therefor to be shown according to proof, including without limitation, for the difference between the wages and benefits he was paid and the wages and benefits he would have been paid had he been paid at the same wage rate as the non-Indian employees who performed substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, with prejudgment interest thereon. plus an additional equal amount as liquidated damages.

62. As the further proximate result of defendants' violations of Labor Code § 1197.5, Rajpal has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Rajpal prays judgment against defendants and each of them as set forth below.

**SIXTH CLAIM FOR RELIEF
FAILURE TO PAY OVERTIME
IN VIOLATION OF LABOR CODE §§ 1194, 1198 AND 510
(DEFENDANTS ARE DEFENDANTS AND EACH OF THEM)**

63. Rajpal refers to the allegations of paragraphs 1-4 above and incorporates the same herein by this reference as though set forth in full.

64. When Rajpal was a Regional Sales Manager, defendants classified him as exempt but he was really a nonexempt inside salesperson. He spent well over half his time working inside the office. Although he was called "Regional Sales Manager," he only supervised one employee and this took up only a small percentage of his time.

65. Rajpal worked some overtime, including without limitation sometimes working over eight hours in a day or over 40 in a week. However, he was not paid anything for these additional hours but instead just received the same salary in weeks he worked overtime as in weeks he didn't. Defendants' failure to pay Rajpal for the overtime violated Labor Code §§ 1194, 1198 and 510.

66. Rajpal is informed and believes that defendants' other Regional Sales Managers in California also were classified as exempt but in reality were nonexempt inside salespersons who spent well over half their time inside the office and who didn't supervise at least two other employees and/or only spent a small percentage of their time supervising other employees. Rajpal is further informed and believes that they also sometimes worked overtime and weren't paid anything for the overtime hours but instead received the same salary in weeks they worked overtime as in weeks they didn't.

67. As the proximate result of defendants' violations of Labor Code §§ 1194, 1198 and 510, Rajpal has suffered damages to be shown according to proof, including without limitation, for the overtime pay he earned but wasn't paid plus prejudgment interest thereon.

68. As the further proximate result of defendants' violations of Labor Code §§ 1194, 1198 and 510, Rajpal has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Rajpal prays judgment against defendants and each of them as set forth below.

**SEVENTH CLAIM FOR RELIEF
FAILURE TO TIMELY PAY ALL WAGES OWED
IN VIOLATION OF LABOR CODE § 204, 201 AND 203
(DEFENDANTS ARE DEFENDANTS AND EACH OF THEM)**

69. Rajpal refers to the allegations of paragraphs 1-4 and 64-66 above and incorporates the same herein by this reference as though set forth in full.

70. Rajpal and defendants' other California Regional Sales Managers, as well as other California employees of defendants, were paid biweekly, i.e., every two weeks. Labor Code § 204, subdivision (d), requires that the wages owed to an employee paid biweekly be paid no later than seven days after the close of the pay period. Defendants violated Labor Code § 204 by failing to ever pay Rajpal anything for the overtime hours he worked or even half the 15% MBO, and by failing to pay him the car allowance until March 2, 2019. Rajpal is informed and believes that defendants violated Labor Code § 204 as to other California Regional Sales Managers by failing to ever pay them anything for the overtime hours they worked. Rajpal is informed and believes that defendants also violated Labor Code § 204 as to other California employees by not paying them the MBO owed them or even close to the MBO owed them and by possibly not paying them the car allowance owed them.

71. Labor Code § 201 requires defendants to pay immediately upon termination all wages they owe to employees they terminate. Defendants violated Labor Code § 201 by not paying Rajpal immediately upon termination (or even at any subsequent time) anything for the overtime hours he worked or even half the 15% MBO still owed him. Rajpal is informed and believes that defendants violated Labor Code § 201 as to other California Regional Sales Managers they terminated by not paying them immediately upon termination (or even at any subsequent time) anything for the

overtime hours they worked. Rajpal is informed and believes that defendants also violated Labor Code § 204 as to other California employees they terminated by not paying them immediately upon termination (or even at any subsequent time) the MBO owed them or even close to the MBO owed them and by possibly not paying them the full car allowance owed them.

72. For employees to whom defendants willfully fail to pay all wages owed in accordance with Labor§ 201, defendants are required by Labor Code§ 203 to continue the wages as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. Defendants' failure to pay the wages to Rajpal and other terminated California employees that were owed them under Labor Code § 201, as alleged in paragraph 71, was willful. Therefore, defendants were required to continue to pay the wages of Rajpal and other terminated California employees for thirty days after their termination. In violation of Labor Code § 203, defendants did not do so.

73. As the proximate result of defendants' violations of Labor Code §§ 204, 201 and 203, Rajpal has suffered damages to be shown according to proof, and is entitled to an award therefor, including without limitation for all wages owed to him when he was terminated that he was not paid, with prejudgment interest thereon, for prejudgment interest on his car allowance from the date when it was due each month until March 2, 2019 when it was finally paid, and for a continuation of his wages for thirty days after his termination.

74. As the further proximate result of defendants' violations of Labor Code §§ 204, 201 and 203, Rajpal has had to hire attorneys and incur litigation expenses to prosecute this lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown according to proof.

WHEREFORE, Rajpal prays judgment against defendants and each of them as set forth below.

/

/

/

/

**EIGHTH CLAIM FOR RELIEF**
**FAILURE TO FURNISH ACCURATE, COMPLETE EARNINGS STATEMENTS IN VIOLATION OF LABOR CODE § 226, SUBDIVISION (A)**
**(DEFENDANTS ARE DEFENDANTS AND EACH OF THEM)**

75. Rajpal refers to the allegations of paragraphs 1-4, 64-66 and 70 above and incorporates the same herein by this reference as though set forth in full.

76. Labor Code § 226, subdivision (a), paragraphs (1), (2), (5) and (9), require employers to furnish employees with earnings statements semi-monthly or at the time of each payment of wages which include the gross and net wages earned, the total hours worked by the employee, and the hourly rates and number of hours worked at each hourly rate. Defendants violated Labor Code § 226, subdivision (a), paragraphs (1) and (5), as to Rajpal by not including in the gross and net wages listed on his earnings statements the amounts he earned for the overtime hours or the full amount he earned for the MBO, and by not including on any of his earnings statements until March 2, 2019, the $400 car allowance he earned each month. Defendants additionally violated Labor Code § 226, subdivision (a), paragraphs (2) and (9), as to Rajpal by not accurately listing on his earnings statements the true number of hours he worked, his true hourly rates and the number of hours he worked at each hourly rate. Indeed, defendants could not do so since they did not maintain records of the hours Rajpal worked. Their failure to maintain records of Rajpal's hours worked violated Labor Code § 1174, subdivision (d), and Labor Code §§ 1198 and 1199 (through §§ 1198 and 1199's incorporation of the standard conditions of labor in Wage Order 4).

77. Rajpal is informed and believes that defendants violated Labor Code § 226, subdivision (a), paragraphs (1), (2), (5) and (9), as to other California Regional Sales Managers by not including in the gross and net wages listed on their earnings statements the amounts they earned for overtime hours, the true number of hours they worked, and their true hourly rates and the number of hours they worked at each hourly rate. He is informed and believes that defendants could not do so because they did not maintain records of the hours California Regional Sales Managers worked. Their failure to maintain records of their California Sales Managers' hours worked violated Labor Code § 1174, subdivision (d), and Labor Code §§ 1198 and 1199 (through §§ 1198 and 1199's incorporation of the standard conditions of labor in Wage Order 4). Rajpal is further informed and believes that

17
Complaint

1  defendants violated § 226, subdivision (a), paragraphs (1) and (5), as to other California Regional
2  Sales Managers and other California nonexempt employees by not including in the gross and net
3  wages listed on their earnings statements the full amounts they earned for the MBO, and by possibly
4  also not including the car allowance amounts they earned.

5       78. Defendants' failure to comply with Labor Code § 226, subdivision (a), was knowing and
6  intentional in that they knew that the itemized statements that they provided Rajpal did not include
7  the items set forth in paragraph 76 above. Rajpal is deemed to have suffered injury from defendants'
8  knowing and intentional failure to comply with Labor Code § 226, subdivision (a), in that they failed
9  to accurately set forth on his earnings statements the true number of hours he worked, his true hourly
10 rates and the number of hours he worked at each hourly rate, and Rajpal could not promptly and
11 easily determine any of this information from the earnings statements alone. Also, defendants'
12 failure to include on the earnings statements the amounts Rajpal earned for the overtime hours or the
13 full amount he earned for the MBO, and until March 2, 2019, the $400 car allowance he earned each
14 month injured Rajpal because it allowed defendants to avoid paying Rajpal these amounts.

15      79. Because Rajpal suffered injury as the proximate result of defendants' knowing and
16 intentional violations of Labor Code § 226, subdivision (a), he is entitled to statutory damages and
17 penalties to be shown according to proof.

18      80. As the further proximate result of defendants' violations of Labor Code § 226,
19 subdivision (a), Rajpal has had to hire attorneys and incur litigation expenses to prosecute this
20 lawsuit and is entitled to an award of attorneys' fees and litigation expenses therefor to be shown
21 according to proof.

22      WHEREFORE, Rajpal prays judgment against defendants and each of them as follows:

23      1. On the first through third claims for relief, for damages and other relief to be shown
24 according to proof, including without limitation for lost income and benefits with prejudgment
25 interest thereon, emotional and physical distress, inconvenience, mental anguish, loss of enjoyment
26 of life, loss of reputation, and other nonpecuniary losses, punitive damages, and reasonable
27 attorneys' fees and litigation expenses to be shown according to proof;

28

2. On the fourth claim for relief, for damages and other relief to be shown according to proof, including without limitation, for lost income and benefits with prejudgment interest thereon, for a penalty of $10,000 for each violation of Labor Code § 98.6, and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

3. On the fifth claim for relief, for damages and other relief to be shown according to proof, including without limitation, for the difference between the wages and benefits he was paid and the wages and benefits he would have been paid had he been paid at the same wage rate as the non-Indian employees who performed substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, with prejudgment interest thereon. plus an additional equal amount as liquidated damages, and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

4. On the sixth claim for relief, for damages and other relief to be shown according to proof, including without limitation, for the overtime pay he earned but wasn't paid plus prejudgment interest thereon, and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

5. On the seventh claim for relief, for damages and other relief to be shown according to proof, including without limitation, for all wages owed to him when he was terminated that he was not paid, with prejudgment interest thereon, for prejudgment interest on his car allowance from the date when it was due each month until March 2, 2019 when it was finally paid, and for a continuation of his wages for thirty days after his termination, and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

6. On the eighth claim for relief, for damages and other relief to be shown according to proof, including without limitation, for statutory damages and penalties, and for reasonable attorneys' fees and litigation expenses to be shown according to proof;

7. For costs of suit; and

/
/
/

8. For such other and further relief as this Court deems just and proper.

DATED: March 5, 2020

                                            HIGHMAN & HIGHMAN
                                            A PROFESSIONAL LAW ASSOCIATION

By*/s/ Bruce J. Highman*
Bruce J. Highman
Attorneys for Plaintiff

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

DATED: March 5, 2020

                                            HIGHMAN & HIGHMAN
                                            A PROFESSIONAL LAW ASSOCIATION

By*/s/ Bruce J. Highman*
Bruce J. Highman
Attorneys for Plaintiff